IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:12-CV-81-FL

| | |
|---|---|
| SCOTTSDALE INSURANCE COMPANY, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) ) **ORDER** |
| CHILDREN'S HOME SOCIETY OF NORTH CAROLINA, INC. and RONALD E. FORD, SR., Administrator of the Estate of Sean Paddock, | ) ) ) ) ) ) |
| Defendants. | |

This matter comes before the court on the parties' cross-motions for summary judgment, (DE 34, 38, 41). All motions have been fully briefed, and issues raised are ripe for ruling. For the reasons that follow, the court will grant plaintiff's motion for summary judgment, and deny defendants' motions.

**STATEMENT OF THE CASE**

This action between plaintiff Scottsdale Insurance Company and defendants Children's Home Society of North Carolina, Inc. ("CHSNC") and Ronald E. Ford, Sr., Administrator of the Estate of Sean Paddock ("the Estate") (collectively "defendants") arises out of a lawsuit filed in the Johnston County Superior court in 2008 ("the underlying lawsuit"). In the underlying lawsuit, the Estate filed a third amended complaint on February 15, 2012, against CHSNC and Johnny and Lynn Paddock ("the Paddocks," not a party to this lawsuit) for personal injury and wrongful death claims

arising out of the death of Sean Paddock, a minor.

Plaintiff – who provided CHSNC with insurance policies ("the Policies") effective during the time of relevant events in the underlying lawsuit – filed complaint for declaratory judgment in this court on February 21, 2012. Plaintiff seeks a declaration that the only indemnity coverage it owes to CHSNC in the underlying lawsuit falls under the relevant policies' Sexual and/or Physical Abuse Liability Coverage Form. CHSNC answered and counterclaimed on March 16, 2012, and the Estate likewise answered and counterclaimed on March 19, 2012. On March 22, 2012, the Estate filed an amended answer and counterclaim.

On May 8, 2012, the Estate filed a fourth amended complaint in the underlying lawsuit. With consent of plaintiff in this action, on May 10, 2012, CHSNC filed an amended answer and counterclaim, and the Estate filed a second amended answer and counterclaim. Defendants seek a declaration that coverage arises under other provisions of the policies. On June 6, 2012, plaintiff filed a motion for summary judgment. CHSNC filed its own for summary judgment on June 29, 2012, and the Estate also filed a motion for summary judgment on June 30, 2012.

## STATEMENT OF UNDISPUTED FACTS

The material facts of this case are not in dispute, and are as follows.

A.   The Underlying Lawsuit

In the Estate's fourth amended complaint – attached to plaintiff's motion for summary judgment as Exhibit B – it alleges that CHSNC "is in the business of assisting in the arrangement of adoptions in return for payments from the state and/or county departments of social services." Pl.'s Ex. B. ¶ 6. The Estate further alleges that CHSNC had an active role in placing Sean Paddock and his siblings (referred to in Exhibit B as "the Ford children") in the Paddocks' home in January

2005. Id. at ¶¶ 62-71. After this time, Sean Paddock and his siblings were placed with the Paddocks under supervision of a Wake County Human Services employee on March 11, 2005. Id. at ¶ 94. Sean Paddock and his siblings were formally adopted by the Paddocks on July 22, 2005. Id. at ¶ 17.

The Estate alleges that from January 2005, until Sean Paddock's death in February 2006, the Paddocks repeatedly abused him in numerous ways, including: beating him with a variety of objects; telling him nobody loved him; kicking and pushing him around the house; forcing him to stand in a small confined area ("the puppet stand") which prevented him from being able to see or interact with anyone else, and keeping him there most of the day; showing him toys but not allowing him to play with them; forcing him to eat his own feces; and tightly binding him in blankets and placing heavy objections on him at nights so the he could not move (which the Paddocks referred to as "the mummy style"), sometimes wrapping his face in duct tape. Id. at ¶¶ 99-101, 113-115. On the evening of February 25, 2006, Sean Paddock was allegedly bound in the mummy style with his head and mouth bound in duct tape, causing his death by asphyxiation. Id. at ¶¶ 118-119.

The Estate alleges that CHSNC was negligent in its conduct during the adopting process of Sean Paddock and his siblings, including in failing to discover facts and circumstances that should have been discovered in the exercise of reasonable care and which would have prevented the Paddocks' adoption of Sean Paddock and his siblings. Id. at ¶ 132. The Estate further alleges that such negligence was a proximate cause of the numerous injuries Sean Paddock suffered, and of his death. Id. at ¶¶ 133-138.

B.     The Insurance Polices

Plaintiff issued to CHSNC a general liability policy, No. CLS1068579, with an effective period of January 21, 2005, to January 21, 2006 (the "First Policy"). Plaintiff later issued a renewed

3

policy, No. CLS106857901, for the period of January 21, 2006, to January 21, 2007, with terms identical to the First Policy (the "Second Policy" together with the First Policy, "the Policies"). The Policies contain numerous forms, and relevant to this matter are the Commercial General Liability Coverage Form, the Errors and Omissions Coverage Part, the Sexual and/or Physical Abuse Exclusion endorsement ("the SPAE"), and the Sexual and/or Physical Abuse Liability Coverage Form ("the SPAL").

The Commercial General Liability Coverage Form contains various coverage provisions. Material to this case is "Coverage A" which provides for coverage of up to one million dollars ($1,000,000.00) per occurrence and three million dollars ($3,000,000.00) in the aggregate for sums CHSNC becomes legally obligated to pay as damages because of, among other things, "bodily injury" to which the policy applies. See Pl.'s Ex. A, 7. "Bodily injury" is defined as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." Id. at 18. Also material is "Coverage B" which provides for coverage of up to one million dollars ($1,000,000.00) which CHSNC becomes legally obligated to pay as damages because of "personal and advertising injury" to which the policy applies, caused by an offense arising out of CHSNC's business if such offense was committed in the "coverage territory," including the United States, during the effective period of the policy. See id. at 11-12, 18. "Personal and advertising injury" is defined to include "injury, including consequential 'bodily injury', arising out of . . . False arrest, detention or imprisonment." Id. at 20.

In the Errors and Omissions Coverage Part of the policies, plaintiff agrees to pay sums CHSNC becomes liable to pay as damages due to an "error or omission" to which the policy applies. See id. at 32. Coverage is limited to one millions dollars ($1,000,000.00) per claim and three

4

million dollars ($3,000,000.00) aggregate. See id. "Error or omission" is defined to mean "any negligent act, error or omission while performing any services normal to the business of the insured." Id. at 37.

The Policies also include a number of other exclusions. Particularly relevant to this litigation is the SPAE, which provides, in pertinent part, as follows.

> This endorsement modifies insurance provided under:
> **COMMERCIAL GENERAL LIABILITY COVERAGE PART**
> **PROFESSIONAL LIABILITY COVERAGE PART**
> **ERRORS AND OMISSIONS COVERAGE PART**
>
> This policy does not apply to any injury sustained by any person arising out of or resulting from "Sexual and/or Physical abuse" by:
>
> . . .
>
> 4.    any other person.
>
> . . .
>
> The intent of this endorsement is to exclude all injury sustained by any person, including emotional distress, arising out of "Sexual and/or Physical abuse" including but not limited to "Sexual and/or Physical abuse" caused by negligent employment, investigation, supervision, or reporting to the proper authorities, or failure to so report, or retention of a person for whom any insured is or over was legally responsible.
>
> The following definitions are added to the policy:
>
> 1.    "Sexual and/or Physical abuse" means sexual or physical injury or abuse, including but not limited to assault and battery, negligent or deliberate touching, corporal punishment and mental abuse.
>
> . . .
>
> 3.    "Damages" means all damages, including damages for death, which are payable because of an injury to which this insurance applies.
>
> All other terms and conditions remain unchanged.

Id. at 28.

Finally, the Policies included the SPAL, which, in exchange for an additional premium charged, provides for coverage of one hundred thousand dollars ($100,000.00) per claim and three hundred thousand dollars ($300,000.00) aggregate "only with respect to Sexual and/or Physical Abuse Liability as indicated." Id. at 26. Sexual and/or Physical Abuse for purposes of coverage under the SPAL is defined as "sexual or physical injury or abuse, including assault and battery, negligent or deliberate touching."

**COURT'S DISCUSSION**

A.  Standard of Review

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, 477 U.S. 242, 247–48 (1986) (holding that a factual dispute is "material" only if it might affect the outcome of the suit and "genuine" only if there is sufficient evidence for a reasonable jury to find for the non-moving party). The party seeking summary judgment bears the initial burden of demonstrating the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate with specific evidence that there exists a genuine issue of material fact requiring trial. Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986).

The meaning of language used in an insurance policy is a question of law for the court to decide. Wachovia Bank & Trust Co. v. Westchester Fire Ins. Co., 276 N.C. 348, 354, 172 S.E.2d 518, 522 (1970). "As with all contracts, the goal of construction is to arrive at the intent of the parties when the policy was issued." Woods v. Insurance Co., 295 N.C. 500, 505, 246 S.E.2d 773,

6

777 (1978). Thus "[w]here a policy defines a term, that definition is to be used." C.D. Spangler Const. Co. v. Indus. Crankshaft & Eng'g Co., Inc., 326 N.C. 133, 142, 388 S.E.2d 557, 563 (1990) (quotations omitted). On the other hand, "nontechnical words, not defined in the policy, are to be given the same meaning they usually receive in ordinary speech, unless the context requires otherwise." Grant v. Insurance Co., 295 N.C. 39, 42, 243 S.E.2d 894, 897 (1978). "The various terms of the policy are to be harmoniously construed, and if possible, every word and every provision is to be given effect." Woods, 295 N.C. at 506.

If the language of a policy is ambiguous, "all doubt or uncertainty as to the meaning of the contract shall be resolved in favor of the insured." Register v. White, 358 N.C. 691, 700, 599 S.E.2d 549, 556 (2004) (quotations omitted). Accordingly, "[e]xclusions . . . are not favored, and are to be strictly construed to provide the coverage which would otherwise be afforded by the policy." Maddox v. Colonial Life & Acc. Ins. Co., 303 N.C. 648, 650, 280 S.E.2d 907, 908 (1981). An ambiguity, however, is not established by mere disagreement between parties as to the meaning of certain language. Collins & Aikman Corp. v. Hartford Acc. & Indem. Co., 335 N.C. 91, 103, 436 S.E.2d 243, 250 (1993). "An ambiguity exists where, in the opinion of the court, the language of the policy is fairly and reasonably susceptible to either of the constructions asserted by the parties." Maddox, 303 N.C. at 650. Thus, where there is no ambiguity, "the court must enforce the contract as the parties have made it and may not, under the guise of interpreting an ambiguous provision, remake the contract." Wachovia Bank & Trust Co., 276 N.C. at 354.

Finally, an insured bears the burden of showing coverage, but where the insurer is relying on a clause that excludes coverage, the burden is on the insurer to establish that exclusion. Nationwide Mut. Ins. Co. V. McAbee, 58 N.C. 326, 328, 105 S.E.2d 496, 497 (1966).

B.    Analysis

Plaintiff asserts that because of the SPAE, the only indemnity coverage it owes to CHSNC in the underlying lawsuit arises out of the SPAL, and that no coverage arises under either Coverage B of the Commercial General Liability Form, or under the Errors and Omissions Part.  Defendants assert that the SPAE is ambiguous and therefore does not exclude coverage.  Thus, in addition to the coverage arising under the SPAL, CHSNC is entitled to coverage under the First and Second Policies as follows:

- First Policy: (a) coverage under the Commercial General Liability Coverage Form, Coverage A, for bodily injury claims occurring during the policy period with limits of one million dollars ($1,000,000.00) per occurrence, and (b) coverage under the Errors and Omissions Part with limits of one million dollars ($1,000,000.00) for the wrongful death claim.

- Second Policy: (a) coverage under the Commercial General Liability Coverage Form, Coverage A, for bodily injuries occurring during the policy period and the wrongful death claim with limits of one million dollars ($1,000,000.00) and, in the alternative, (b) coverage under the Commercial General Liability Coverage Form, Coverage B, for the wrongful death claim.

In the alternative, defendants assert that should the SPAE to be valid, the First Policy nevertheless provides coverage under the Errors and Omissions Part in the amount of one million dollars ($1,000,000.00) for the wrongful death of Sean Paddock, and the Second Policy provides coverage of one million dollars ($1,000,000.00) for the wrongful death of Sean Paddock under the Commercial General Liability Form, Coverage B.  Defendants also contend that even if the SPAE is valid, it does not exclude coverage for non-contact emotional and verbal abuse.

8

### 1. The Validity of the SPAE

Defendants first contend that the SPAE is ambiguous when read with the insuring language in Coverage A of the Commercial General Liability Form ("Coverage A") because of the over breadth of the exclusion. Defendants note that the SPAE's definition of "sexual and/or physical abuse" is "sexual or physical *injury or abuse* including, but not limited to assault and battery, negligent or deliberate touching, corporal punishment, and mental abuse." Thus, defendants contend that by the terms of this definition any physical injury counts as "sexual and/or physical abuse." Defendants also note that Coverage A provides that plaintiff will pay what CHSNC becomes liable to pay because of "bodily injury" where the term is defined to include "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." Defendants therefore argue the breadth of this definition of "sexual and/or physical abuse" in the SPAE makes any coverage CHSNC would have reasonably believed it was getting under the Coverage A of the Policies illusory.

When determining whether a provision is ambiguous or valid, the question is not whether such ambiguity or invalidity exists when applied to the facts before the court, not whether a provision may be ambiguous or invalid in a hypothetical scenario. See Register, 358 N.C. at 695 (2004) ("An ambiguity can exist when, even though the words themselves appear clear, *the specific facts of the case* create more than one reasonable interpretation of the contractual provisions.") (emphasis added); see also Highwood Properties, Inc. v. Executive Risk Indem., Inc., 407 F.3d 917, 923-24 (8th Cir. 2005) (applying North Carolina law) ("Context is often central to the way in which policy language is applied: the same language may be found both ambiguous and unambiguous as applied to different facts."); Tzung v. State Farm Fire & Cas. Co., 873 F.2d 1338, 1340 (9th Cir.

1989) ("[T]he court must construe the clause with regard to the contract as a whole, and its meaning is to be derived from the circumstances of the particular case and not in the abstract.") (citations omitted).

In this case, when considering the facts before this court, there is no ambiguity. The acts alleged in the fourth amended complaint are clearly acts of physical abuse. Therefore concerns regarding exclusions of physical injury unrelated to physical abuse are entirely academic with no relevance to the instant action. Defendants have only raised a hypothetical ambiguity, not a genuine ambiguity applicable to the facts of this case, and the court does not find the SPAE ambiguous or invalid when read in conjunction with Coverage A. Cf. The Israel Baptist Church of Baltimore/Collinton Square Non Profit Corp. v. Scottsdale Ins. Co., WDQ-05-CV-830 (D.Md. Jan 4, 2006) (holding Scottsdale's SPAE was clear and unambiguous in the context of a sexual assault).

Defendants next contend that the SPAE is ambiguous when read with the insuring language in Coverage B of the Commercial General Liability Form ("Coverage B"). Defendants point out that Coverage B provides coverage for "personal and advertising injury" caused by an offense arising out of CHSNC's business and defines such injury as including "consequential 'bodily injury', arising out of . . . false arrest, detention or imprisonment." Defendants contend that Sean Paddock was falsely imprisoned by the Paddocks, and thus the SPAE conflicts with Coverage B, making it ambiguous.

"Where there are apparently conflicting provisions in an insurance contract, or when the policy is ambiguously worded, the general rule of construction with respect thereto, is that the one most favorable to the assured should be adopted." Felts v. Shenandoah Life Ins. Co., 221 N.C. 148, 19 S.E.2d 259, 261 (1942); see also Catawba Valley Mach. Co. v. Aetna Ins. Co., 13 N.C. App. 85,

10

90, 185 S.E.2d 308, 311 (1971) ("If provisions in an insurance contract are conflicting, the provision favorable to the insured should be held controlling."). An exclusion, however, by definition, "limits the extent of the coverage set forth in an insurance policy." Carolina Materials, LLC v. Cont'l Cas. Co./CNA Ins. Companies, No. 3:08-CV-158-RJC, 2009 WL 1346121, at *3 (W.D.N.C. May 12, 2009). Moreover, exclusions are "a well accepted and effective manner of specifically defining the actual coverage intended." Catawba Valley Mach., 13 N.C. App. at 90. Thus, an exclusion is said to present an irreconcilable conflict when it purports to "totally eliminate the coverage defined in a comprehensive statement of coverage." Id.; see also N. Carolina Farm Bureau Mut. Ins. Co. v. Fowler ex rel. Rudisill, 162 N.C. App. 100, 104, 589 S.E.2d 911, 914 (2004) ("Simply because an exclusion limits coverage, however, does not, by itself, create an ambiguity in the policy.").

Assuming, without deciding, that the fourth amended complaint in the underlying lawsuit alleges that Sean Paddock was falsely imprisoned, the court nonetheless finds that the SPAE does not conflict with Coverage B.[1] Not all instances of false arrest, detention or imprisonment would also qualify as "sexual and/or physical abuse" under the SPAE. Thus the SPAE does not totally eliminate the coverage defined therein. Moreover, Coverage B defines personal and advertising injury as injury arising out of numerous other offenses, including malicious prosecution, wrongful eviction, oral or written publication of material that slanders or libels a person, the use of another's advertising idea in the insured's advertisement, and more. See Pl.'s Ex. B. 20. Therefore the SPAE does not conflict with Coverage B, and no ambiguity arises.

    2.     Coverage Under Coverage B

Defendants assert that even if the SPAE is valid and applicable, coverage for CHSNC arises

---

[1] Plaintiff raises many arguments as to why false imprisonment was not alleged, and indeed could not properly be alleged, in the underlying lawsuit. However, the court need not address those argument here.

11

under Coverage B of the Commercial General Liability Form in the Second Policy, and such coverage is not excluded by the SPAE. Defendants argue that the underlying complaint alleges facts which would show that Sean Paddock was falsely imprisoned by the Paddocks, and that his wrongful death arose out of both the physical abuse that he suffered and out of his false imprisonment. Thus, defendants argue that because Coverage B covers claims for "personal and advertising injury" – which is defined to include wrongful death arising out of false imprisonment – it provides coverage here. They further argue that the SPAE does not exclude this coverage because the SPAE does not exclude coverage for false imprisonment.

Plaintiff responds that the Estate has not alleged – and indeed could not allege – false imprisonment. Plaintiff further contends that even if the Estate alleged Sean Paddock's false imprisonment, since that allegation is made against the Paddocks and not CHSNC itself, no coverage would arise. Finally, plaintiff contends that even if a claim of false imprisonment were made that would otherwise trigger coverage under Coverage B, the SPAE operates to exclude such coverage.

The court need not decide whether the Estate has alleged false imprisonment in its fourth amended complaint, nor need it decide whether such an allegation against the Paddocks would trigger coverage under Coverage B, as plaintiff is correct that the SPAE would exclude any such coverage. As defendants note, it is true that in North Carolina, when multiple concurring causes of liability are alleged, "the sources of liability which are excluded from . . . policy coverage must be the sole cause of the injury in order to exclude coverage under the policy." State Capital Ins. Co. v. Nationwide Mut. Ins. Co., 318 N.C. 534, 546 (1986). Multiple causes of liability, however, have not been alleged here.

In this case, defendants attempt to paint the actions which caused Sean Paddock's death as

12

not one but two causes by characterizing those actions as both false imprisonment and physical abuse. Assuming that the abuse alleged could also be characterized as false imprisonment, this is not a case involving multiple causes of the injury here at issue, namely, wrongful death. Cf. State Capital Ins. Co., 318 N.C. at 541 (homeowner policy provided coverage where both negligence in handling a gun, and the use of a vehicle were causes of injury, and the policy only excluded injuries arising out of use of a vehicle were excluded); Waseca Mut. Ins. Co. v. Noska, 331 N.W.2d 917 (Minn. 1983) (because fires were caused both by negligence in not covering barrels containing hot coals and out of use of an automobile to transport those barrels coverage arose under both a homeowners and an automobile policy). Rather this is a case where a set of actions giving rise to liability can be characterized in two ways. Since any acts of false imprisonment alleged here are also acts of physical abuse, any coverage for liability arising out of or resulting from those acts is excluded by the SPAE.

   3.  Coverage under the Errors and Omissions Liability Part

Defendants next contend that regardless of the validity of the SPAE, coverage arises under the Errors and Omissions Part of the First Policy. They point out that this portion of the First Policy provides for coverage to the insured for damages to which the insurance applies resulting from "any negligent act, error or omission while performing any services normal to the business of the insured." Defendants contend that because the Estate alleges negligence by CHSNC resulted in Sean Paddock's adoption by the Paddocks, coverage arises under the Errors and Omissions Part and is not excluded by the SPAE.

This same argument was rejected by our district in Allstate Ins. Co. v. Bates, 185 F. Supp. 2d 607 (E.D.N.C. 2000). In Allstate, the court had before it a policy which excluded coverage for

13

"bodily injury . . . arising out of sexual molestation, corporate punishment or physical or mental abuse." Id. at 612. Defendant William Bates was being sued in an underlying lawsuit for molestation of Kaitlyn Coe, a minor. Id. at 609. His wife and co-defendant Patricia Bates was also being sued for alleged negligent acts – namely failure to protect the child invited into her home from the acts of her husband and failure to warn the child's parents of her husband's propensities. Id. at 612. In the declaratory action filed in this district by their insurance company, Patricia Bates argued that the injury to Kaitlyn "arose" not from the molestation, but from Patricia Bates's negligence, and thus the exclusion did not apply. Id.

The court rejected this argument, holding that "[e]ven if this court found that Ms. Bates' negligence could be a separate and non-excluded cause of the injury to Kaitlyn Coe" the exclusion would still operate to preclude coverage of Patricia Bates. Id. at 613. The court noted that "Mr. Bates' sexual molestation of Kaitlyn Coe is not 'incidental' to the negligence claim against 'Ms. Bates'–it is, in fact, the motivating factor for such a claim. Without the molestation there would be no injury and thus, no basis for the negligence claim." Id. Because the damages "arose out of" molestation, not negligence, the court held that Patricia Bates fell within the policy's exclusion. Id.

Similarly, in the case at bar, the SPAE excludes coverage for "injury sustained by any person arising out of or resulting from 'Sexual and/or Physical abuse.'" Just as in Allstate, it is clear that the alleged harm to Sean Paddock is alleged to have arisen from physical abuse by the Paddocks, not from CHSNC's negligence. See id. at 613; see also Erie Ins. Exchange Co. v. First United Methodist Church, 690 F. Supp. 2d 410, 415 (W.D.N.C. 2010) (where preschool student acted out sexually with other students, the harm to those other students arose from molestation, not negligence on behalf of those associated with the preschool; thus because defendants' insurance policy

14

contained an exclusion for molestation, the insurance company had no duty to indemnify defendants).[2]

    4.    Mental Abuse

Finally, defendants contend that the SPAE does not operate to exclude injuries suffered by Sean Paddock as a result of non-contact emotional and verbal abuse. This argument is without merit. The SPAE operates to exclude injuries arising out of "Sexual and/or Physical abuse," defined as "sexual or physical injury or abuse, including but not limited to assault and battery, negligent or deliberate touching, corporal punishment *and mental abuse*." (emphasis added). Although this is not the common definition of the terms sexual abuse or physical abuse, where an insurance policy defines a term, the definition provided is to be used. See C.D. Spangler Const. Co., 326 N.C. at 142; see also BLACK'S LAW DICTIONARY (9th ed. 2009), (defining "emotional abuse" as physical *or verbal abuse* that causes or could cause serious emotional injury. — *Also termed mental abuse*; psychological abuse.") (emphasis added).

Defendants cite to Scottsdale Ins. Co. v. Educ. Mgmt., Inc., CIVA 04-1053, 2006 WL 2803052, at *3 (E.D. La. Sept. 27, 2006), where a court in the Eastern District of Louisiana found the language of the SPAE to be ambiguous with respect to mental abuse. That court found that it could be read as excluding only mental abuse flowing from sexual or physical abuse. Id. This court does not find that decision persuasive. The language of the definition in the SPAE purports to exclude "mental abuse," not "mental abuse flowing from sexual or physical abuse." Thus, the SPAE excludes damages arising out of the injuries suffered by Sean Paddock due to non-contact emotional

---

[2] Courts in other jurisdictions have ruled similarly. See e.g., Nautilus Ins. Co. v. Our Camp Inc., 136 F. App'x 134, 138 (10th Cir. 2005); Flores v. AMCO Ins. Co., CVF071183LJODLB, 2007 WL 3408255, at *8 (E.D. Cal. Nov. 15, 2007) aff'd, 323 F. App'x 587 (9th Cir. 2009); Philbrick v. Liberty Mut. Fire Ins. Co., 156 N.H. 389, 392-93, 934 A.2d 582, 585-86 (2007)

15

and verbal abuse.[3]

## CONCLUSION

Based on the foregoing, plaintiff's motion for summary judgment is GRANTED, and defendants motions for summary judgment are DENIED. The allegations of the underlying lawsuit are excluded from the Policies' Commercial General Liability Coverage Form and Errors and Omissions Coverage Part by the Sexual and/or Physical Abuse Exclusion endorsement. Thus the Sexual and/or Physical Abuse Liability Coverage Form provides the only indemnity obligation for the injuries alleged in the underlying lawsuit. The clerk is DIRECTED to close this case.

SO ORDERED, this the 3rd day of July, 2013.

_____
LOUISE W. FLANAGAN
United States District Judge

---

[3] The SPAL, which provides some coverage for some injuries excluded by the SPAE, does not include mental abuse in its definition of "sexual and/or physical abuse" for which it grants coverage. Therefore no coverage exists for damages arising out of the injuries suffered by Sean Paddock due to mental abuse.